UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HENRY CALLAWAY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-1506 (RWR) |
| UNITED STATES DEPARTMENT OF TREASURY, *et al*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on plaintiff's Motion Requesting That This Court Alter and/or Amend Its Judgment, or Alternatively Reconsider Its Judgment ("Pl.'s Mot. to Recons.") [Dkt. #100] and Defendants' Fourth Renewed Motion for Summary Judgment with its supporting memorandum ("Defs.' Mem.") [Dkt. #104]. The Court will deny the former and grant the latter.

1.  BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to challenge responses to requests for information he submitted to the Executive Office for United States Attorneys ("EOUSA") and the United States Customs Service ("Customs").[1] Compl. at 1 (page numbers designated by plaintiff). He "basically request[ed]

---

[1] The United States Customs Service was a component of the United States Department of the Treasury, and since has become a part of the Department of Homeland Security. Its functions have been divided between U.S. Customs and Border Protection and Immigration and

1

any and all criminal investigation and prosecution records pertaining to himself," *id*, at 2, and to "criminal case No. 95-209-CR-T-21(E) [in the United States District Court for the Middle District of Florida] including all Audio Recordings made involving [p]laintiff."*id* at 3.  Plaintiff identified the audio recordings by their trial exhibit numbers: N-113, N-114, N-115, and N-116. *See id.*, Ex. Z (Contact Log) at 50-51 (page number designated by plaintiff); Defs.' Mot. for Summ. J. [Dkt. #22], First Kornmeier Decl., Ex. J (Letter to Richard L. Huff, Office of Information and Privacy, U.S. Department of Justice, dated August 21, 2003) at 2 (emphasis in original) & First Fields Decl., Ex. A (Freedom of Information Request dated May 20, 1998) at 2.  Based on subsequent submissions, however, plaintiff was interested only in two tapes, N-113 and N-116, because these "were in their redacted form when turned over to the Plaintiff during discovery" in the criminal matter.  Pl.'s Mot. to Recons. at 2; *see id.* at 25-30.

With three exceptions, all issues in this case have been resolved.  The Court discusses below; (1) plaintiff's motion for reconsideration of the Court's November 16, 2011 Memorandum Opinion and Order with respect to an alleged factual dispute as to the contents of audio tapes released by the EOUSA to plaintiff; (2) the adequacy of Customs' search for information pertaining to the services of Ron Rose Productions; and (3) whether all segregable information has been released to plaintiff.

---

Customs Enforcement.  As in previous memoranda, the Court refers to the recipient of plaintiff's FOIA request as "Customs."

## II.  DISCUSSION

### *A.  Plaintiff's Motion for Reconsideration*

Plaintiff appealed the Court's September 10, 2008 Memorandum Opinion and Order [Dkt. #71-72], and the United States Court of Appeals for the District of Columbia Circuit remanded the case in part for resolution of an apparent factual dispute:

> First, Callaway asked the [EOUSA] to provide unredacted copies of two audio tape recordings.  Although the EOUSA released the tape recordings, there appears to be a factual dispute with regard to the content of the audio tape recordings, which . . . could not be resolved for summary judgment.  The district court relied on an assertion by the EOUSA that it made no redactions to a CD-ROM released to Callaway containing the recordings.  Callaway presented evidence in the form of his verified complaint, attached exhibits, and an expert witness report, which suggest the recordings were redacted . . . . Based on the existence of this factual dispute, summary judgment was inappropriate.

Memorandum, *Callaway v. U.S. Dep't of the Treasury*, No. 08-5480 (D.C. Cir. June 2, 2009) (per curiam) at 1.  The EOUSA's declarant later explained the discrepancy as follows:

> An investigative agency prepares physical evidence such as tapes for use at trial.  Whatever modifications an investigative agency may make to prepare the evidence for trial have already been made prior to giving it to an Assistant United States Attorney to present at trial. The tapes that the USAO for the Middle District of Florida ("USAO/MDFL") had in its possession were the ones that the investigative agency, [Customs], had prepared for the criminal trial of Mr. Callaway.  Any modifications . . . such as shortening of the tapes had already been made prior to the criminal trial.  In response to Mr. Callaway's FOIA request long after the criminal trial, EOUSA requested the tapes from the USAO/MDFL which it received on February 1, 2005, then simply released the tapes on April 4, 2005, in the exact form it had them making no redactions.

3

Mem. of P. &. A. in Supp. of Defs.' Third Renewed Mot. for Summ. J. [Dkt. #88], Fourth Kornmeier Decl. ¶ 5.  It appeared, then, that audio tapes released by the EOUSA to plaintiff had the same content as the audio tapes received by the EOUSA from Customs prior to the trial.  The Court found that the EOUSA fulfilled its obligations under the FOIA by "releasing to [plaintiff] exactly what he requested," Reply to Pl.'s Opp'n to Defs.' Third Renewed Mot. for Summ. J. [Dkt. #95]. Fifth Kornmeier Decl. ¶ 8, namely copies of the recordings in the EOUSA's possession - - without further redaction. *Callaway v. U.S. Dep't of the Treasury*, 824 F. Supp. 2d 153, 158 (D.D.C. 2011).

      Plaintiff takes the position that the Circuit's "ruling . . . was fashioned in an opaque and equivocal manner that left the scope of the remanded proceedings at the whim of one's perspective of the matters." Pl.'s Mot. for Recons. at 5-6.  He argues that this Court misunderstood the scope of the remand, *se generally id.* at 5-9, and that the resolution of the factual dispute with regard to the content of the audio tape recordings requires this Court "to determine if in fact the released audio tapes were redacted audio tapes; [NOT WHO REDACTED THE AUDIO TAPES], as the defendants EOUSA would have it." *Id.* at 6 (brackets and emphasis in original).  The Court must first tape one step back, in his view, and determine "whether or not [Customs] turned over original audio tapes or redacted audio tapes." *Id.* at 20. Plaintiff opines that Customs "turned over to the [USAO/MDFLA] . . . full and complete recordings of the two audio tapes in question N-113 and N-116," *id.* at 17, and that "at some point after [Customs] turn[ed] over the audio tapes, the USAO altered the two original versions of N-113 and N-116 to create trial composite recordings," *id.* at 35-36.  The

4

USAO/MDFLA need not have "discarded the originals," he suggests, but instead may have "copied portions of the original versions onto another cassette, and left the original versions intact within the files." *Id.* at 36.

The Court's authority is limited to directing the release of non-exempt agency records in existence at the time the EOUSA received plaintiff's FOIA request. The FOIA "only obligates [the EOUSA] to provide access to those which it in fact has created and retained." *Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136, 153 (1980). Based on the EOUSA's declarations, the agency has shown that it has searched for and released audio tapes N-113 and N-116 in the same form as the tapes were received from Customs. There is no dispute that these tapes have been redacted, yet nothing in the record of this case demonstrates that the original tapes still exist, or that the original tapes remain in the EOUSA's possession, or that the tapes are improperly withheld. Accordingly, plaintiff's motion for reconsideration will be denied.

        B.     *Defendants' Fourth Renewed Motion for Summary Judgment*

            1.     Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection

5

requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.2d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

      2.      Adequacy of Customs' Search for Expenditure-Related Information

An agency's search must be reasonable. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry*, 684 F.2d at 128). The agency's supporting declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). And a requester's challenge requires that he present evidence rebutting the agency's initial showing of a good faith search. *See Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg*, 705 F.2d at 1351-52.

It appeared that Ron Rose Productions was retained by Customs "to service the 116 audio tapes" generated during the criminal investigation and used as trial exhibits.[2] Pl's Aff. [Dkt.

---

2      An analyst with the Office of Acquisition Management "conducted a standard contractor

#93-1] at 7; *see* Pl.'s Mot. to Recons. at 35. Plaintiff has described Ron Rose Productions as "an audio production company that by design doctors . . . audio and video tapes." *Id.* Plaintiff's FOIA request seeks "[a]ll audio tapes service invoices from Ron Rose [P]roductions for the editing, redacting, and copying of the audio tapes," Defs.' Mot. for Summ. J., First Fields Decl., Ex. G at 4. Customs' prior searches were deemed inadequate, *see Callaway,* 824 F. Supp. 2d at 161-62 (finding that plaintiff's FOIA request reasonably can be interpreted as one encompassing more than investigatory or criminal investigatory records); *see also Callaway v. U.S. Dep't of the Treasury*, No. 04-1506, 2006 WL 6905083, at *7 (D.D.C. Aug. 26, 2006) (noting Customs' failure to explain "the [Tampa and Miami] field offices' systems of records, their contents and organization, or the method of the field offices' searches"), because plaintiff's request reasonably should have been interpreted as one encompassing records other than investigatory or criminal records. "His request for invoices for services rendered by Ron Rose Productions, for example, [did] not so clearly or exclusively pertain to law enforcement that the [Treasury Enforcement Communication System] and [Investigatory Records System] could be the only systems of records likely to contain responsive records." *Callaway*, 824 F. Supp. 2d at 162.

According to Customs, information pertaining to investigation-driven expenditures is not maintained in TECS, Reply to Pl.'s Opp'n to Defs.' Third Renewed Mot. for Summ. J. [Dkt. #95], First Supp. Pavlik-Keenan Decl. ¶ 8, and the agency did not "as a matter of practice,

---

search of all procurement database systems . . . for any contract awarded to Ron Rose Productions by [Customs] for Fiscal Years 1985 to 2012," but the search "did not produce any records showing that Ron Rose Productions was awarded a government contract for services." Reply to Pl.'s Opp'n to Defs.' Fourth Renewed Mot. For Summ. J. [Dkt. #108], Third Supp. Decl. of Catrina M. Pavlik-Keenan ¶ 7.

7

interpret FOIA requests for investigatory files as requests for records of underlying expenditures related to those investigations." *Id.*, First Supp. Pavlik-Keenan Decl. ¶ 7.  Customs' declarant since has "determined that, to the extent that [Customs] procured the services of Ron Rose Productions in 1995 in preparation for plaintiff's criminal proceedings, SAC Tampa Administrative Branch is the only additional location that had not been previously searched which might maintain responsive invoices." Defs.' Mem. Second Supp. Pavlik-Keenan Decl. ¶ 7.  These records "for the time frame at issue, [were] maintained in a manual system of logs and worksheets documenting . . . payment of vendor invoices." *Id.*

On November 16, 2011, Customs "conducted a supplemental search for the production invoices," with the following results:

> The Budget Specialist at the time destroyed the procurement files every three (3) years due to limited onsite storage capacity and pursuant to the National Archive and Records Administration (NARA) General Records Schedules (GRS), N1-GRS-95-1 item 3a1b.  These procurement files would have included any vendor invoices related to the services provided by the Ron Rose Production company in 1995, if acquired by [Customs] would have been destroyed either in 1998 or early 1999 by SAC Tampa.  SAC Tampa did not create record destruction notices during this time period.

*Id.*, Second Supp. Pavlik-Keenan Decl. ¶ 8.  Plaintiff responds with two arguments.

According to plaintiff, if SAC Miami had destroyed the relevant records in 1998 or early 1999, it did so in violation of the FOIA.  *See* Mem. of P. & A. in Opp'n of Defs.' Fourth Renewed Mot. for Summ. J. [Dkt. #106] (Pl.'s Opp'n) at 9.

Plaintiff's initial FOIA request was submitted on May 20, 1998, and "if the in question audio tapes were created on October 19, 1995," the three-year period after which the Ron Rose

8

invoices would have been destroyed ended on October 19, 1998, "five months after the initial of the plaintiff's FOIA request to [Customs]." Mem. of P. & A. in Opp'n of Defs.' Fourth Renewed Mot. for Summ. J. [Dkt. #106] (Pl.'s Opp'n) at 10.

Review of the record shows that plaintiff's original May 20, 1998 FOIA request to Customs does not mention Ron Rose Productions. *See* Defs.' Mot. for Summ. J., First Fields Decl., Ex. A at 2. Not until April 1, 2004, did plaintiff request "audio tapes services invoices from Ron Rose [P]roductions for the editing, redacting, and copy of the audio tapes." *Id.*, First Fields Decl., Ex. G at 4. It is not unreasonable to interpret plaintiff's original request as one for two particular trial exhibits, N-113 and N-116. Nothing in the original requests suggests that plaintiff sought expenditure-related information which may have existed outside of investigatory records. Customs would not have been on notice in 1998 that it should have been seeking invoices.

Plaintiff next argues that Customs' latest search was inadequate. "It is the Plaintiff's position that if [Customs] destroyed or even lost its procurement records for the specified time period, then logic would dictate that [C]ustoms would have to seek such records elsewhere to obtain them." *Id.* He contends that Customs' search is not limited within the veils of the agency," such that Customs was obligated to obtain the invoices from Ron Rose Productions directly. *Id.* At 11.

The FOIA "only obligates [Customs] to provide access to those which it in fact has created and retained." *Kissinger*, 455 U.S. at 153. It need not produce records maintained by another federal government agency or obtain records from any other sources. *See DiPietro v.*

9

*Exec. Office for U.S. Attorneys*, 357 F. Supp. 2d 177, 182 (D.D.C. 2004). And "the fact that responsive documents once existed does not mean that they remain in the [Customs'] custody today or that [Customs'] had a duty under [the] FOIA to retain [them]. *Wilbur v. Cent. Intelligence Agency*, 353 F.2d 675, 678 (D.C. Cir. 2004). The fact that SAC Miami may have destroyed invoices pertaining to Ron Rose Production's services does not render Customs' response to his FOIA request deficient. *See James v. U.S. Secret Serv.*, 811 F. Supp. 2d 351, 358 (D.D.C. 2011) ("An agency does not control a record which has been destroyed, . . . and it is under no obligation to obtain a duplicate of or to re-create a record in order to fulfill a FOIA request." (citations omitted)), *aff'd*, No. 11-5299, 2012 WL 1935828 (D.C. Cir. May 11, 2012) (per curiam); *Flowers v. Internal Revenue Serv.*, 307 F. Supp. 2d 60, 71 (D.D.C. 2004) (crediting IRS affidavits which explained that responsive records were destroyed pursuant to published document-retention schedule); *see also Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 16 (D.D.C. 2011) (rejecting plaintiff's "opinion and speculation as to the existence or wrongful destruction of responsive records").

      C.    *Segregability*

The Court previously concluded that the EOUSA properly withheld information under Exemption 3, and that Customs properly withheld information under Exemptions 2, 7(C), 7(D) regarding one informant under an implied assurance of confidentiality, 7(E), and 7(F), and that all reasonably segregable information has been released. *See Callaway*, 2007 WL 7698581, at *7-17; *see also Callaway,* 824 F. Supp. 2d at 163-65 (concluding that grand jury transcripts retained Exemption 3 protection notwithstanding plaintiff's assertion that information had

entered the public domain).  In addition, the Court found that Customs properly withheld information under Exemption 7(D) with respect to a confidential informant to whom it granted an express assurance of confidentiality.  *See Callaway v. U.S. Dep't of the Treasury*, 577 F. Supp. 2d 1, 3 (D.D.C. 2008).  Although Customs has conducted additional searches since the Court first deemed its and the EOUSA's responses to plaintiff's FOIA requests appropriate, *see* Def.'s Third Renewed Mot. for Summ. J., Pavlik-Keenan Decl. ¶¶ 7-10; Defs.' Mem., Second Supp. Pavlik-Keenan Decl.¶¶ 7-8, no additional records have been located.  Accordingly, the Court's prior segregability ruling, *see Callaway*, 2007 WL 7698581, at *17, stands.  On review of the defendants' supporting declarations, the Court concludes that all reasonably segregable information has been released to plaintiff.

## CONCLUSION

Defendants have demonstrated their compliance with their obligations under the FOIA, and, accordingly, their motion for summary judgment will be granted.  A final Order accompanies this memorandum opinion.

Signed this 30th day of September, 2012.

/s/
RICHARD W. ROBERTS
United States District Judge